## Dintenfass, to use, v. Wirkman.

*J. A. Keough*, for plaintiff; *Peter P. Zion*, for defendant.

LEWIS, J., Dec. 24, 1930.—This is a rule for judgment for want of a sufficient affidavit of defense. The statement of claim avers that on Aug. 24, 1928,

Benjamin Dintenfass, agent, entered into a written lease with Emanuel W. Wirkman, the defendant, providing for a demise of the second floor of premises No. 350 South 15th Street, Philadelphia, to the defendant, for the term of three years from Sept. 15, 1928, for the total amount of $2700, payable monthly, in advance, in the sum of $75 per month. The lease provided, *inter alia:*

"Lessee further agrees that the lessee will not assign this lease nor underlet the said premises or any part thereof, or use and occupy the same other than as insurance offices, without the written consent of the lessor first had and obtained," and further provided:

"Lessor does hereby give to lessee the right and privilege to sublet a portion of the within premises during the term of this lease or any renewal thereof, provided, however, lessee shall have first obtained the written consent of lessor, in writing, to do so."

The use-plaintiff, being the assignee of the lease and owner of the demised premises, brought this action to recover the accelerated rental payable by reason of the alleged removal, on Feb. 13, 1930, of all of the goods and effects of the lessee from the rented premises. The affidavit of defense relies upon the following allegations as a defense to plaintiff's claim:

"At the time the lease agreement was entered into and signed, the Insurance Company of Philadelphia, a corporation created and existing under the laws of the State of Pennsylvania, was being formed and was not yet licensed to do business as an insurance company. The legal plaintiff was informed of this by the defendant, and it was agreed between the legal plaintiff and defendant that an agreement be drawn up in the form in which it was finally drawn and signed, but that the defendant was acting as agent for the Insurance Company of Philadelphia, who were to occupy the premises and who were to pay the rent to the plaintiff and the plaintiff was to look for the payment of the rentals from the Insurance Company of Philadelphia. This was agreed upon prior to and on this condition only did the defendant sign the agreement of lease with the legal plaintiff."

It is further averred in the affidavit of defense that the premises were occupied solely "by and for the benefit of the Insurance Company of Philadelphia;" that all payments of rent were made by the Insurance Company of Philadelphia; "that the said premises were so occupied by the Insurance Company of Philadelphia, with the knowledge and consent of the legal plaintiff;" and that defendant had assigned all his right in the lease to the alleged principal and "had, with the knowledge and consent of the legal plaintiff, entered into this agreement solely for the benefit of the Insurance Company of Philadelphia at the time the corporation was not yet formed or ready to do business."

Has the defendant set forth a sufficient defense to plaintiff's claim?

It is to be noted that no proper averment of a complete novation, under which an alleged assignee bound itself for the performance of the covenants of a written lease, is set forth. Is an allegation of a parol agreement which authorizes the defendant to substitute a third party for himself as the responsible party sufficient upon the record as disclosed in this case?

The general rule is that if an agent contracts in his own name he cannot escape liability on the plea that he acted only as agent for another, nor can parol evidence be introduced to show that he disclosed his agency and mentioned the name of his principal at the time the contract was executed: 21 Ruling Case Law, 896, § 70. The legal relationship of the defendant to the Insurance Company of Philadelphia, in the process of organization and yet unincorporated at the date of the execution of the lease, was that of promoter.

"The most common case of one assuming to act in behalf of a principal not yet in existence is that of a person often called a 'promoter,' who undertakes to act on behalf of a corporation not yet formed, and such a person obviously cannot be the agent of a corporation hereafter to be created, and, as has often been pointed out, his acts and contracts, without something more, cannot impose any liability on the corporation when created. If the person who deals with him knows that the corporation is not yet organized, as is the fact in the majority of cases, there is no room for the doctrine of the warranty of authority. The question in such a case becomes simply, to whom was credit extended? It is, of course, true that the other party dealing in anticipation of the creation of the corporation may be willing to take his chances that the corporation when created will adopt the act, or he may be willing to rely upon funds raised or to be raised. But if, on the other hand, he relies upon any present personal responsibility, it must usually be the responsibility of the person who so assumes to act:" 1 Mechem on Agency, 1014, § 1383.

The fact that the corporation was subsequently formed and accepted the benefits of the lease does not of itself effect a release of the lessee named in the lease, unless there is a novation or an assumption by the corporation, with the consent of the landlord, of the promoter's liability under the lease. This rule is well stated in 14 Corpus Juris, 269, § 312:

"Of course, promoters of a corporation are personally liable on contracts which they have entered into personally, even though they have contracted for the benefit of the projected corporation and although the corporation has been formed and has received the benefit of the contract; and they are not discharged from liability from the subsequent adoption of the contract when formed, unless there is a novation or other agreement to such effect."

The principal question in this case is not the possible liability of the alleged transferee of the lease by virtue of its actual occupancy of the demised premises, but whether an alleged parol agreement that the defendant was acting for and on behalf of the corporation in the process of formation is available as a defense in this action.

In the absence of any allegation of fraud, accident or mistake in the execution of the lease, which provides that the covenants of the lessee are to be performed by the defendant individually, can the terms and effect of the written lease be added to, contradicted or varied by parol or extrinsic evidence of the alleged preliminary disclosed intentions of the parties? We think not.

In Hamilton v. Fleck, 249 Pa. 607, the defendants claimed that the written lease between the plaintiffs and Edward T. Comfort, although signed by the latter, was really made for the Paxson & Comfort Company, which, they alleged, was the real tenant of the premises. Parol testimony was admitted by the court below. It sustained the defendant's contention and found that the tenant named in the lease was acting for and on behalf of the Paxson & Comfort Company; that the fact was known to the lessors at the time the lease was executed, and that Comfort's name as lessee was used as the means by which the lease was made to the Paxson & Comfort Company, the real tenant of the property. This ruling was, on appeal, reversed by the Supreme Court, which held the court below in error in refusing to strike out the parol testimony offered. Mr. Justice Mestrezat, speaking for the court, said:

"The covenants of the lessee are to be performed by Comfort individually and not by the Paxson & Comfort Company. So far as the lease discloses, the company is not a party to it, has no rights under it, and is not obligated to perform any covenants contained in it. No reference is made to the lease of 1902 nor to any of its terms or provisions. In other words, the lease of 1913, executed by Comfort as lessee, so far as its written terms disclose, was not

intended to be and is not a renewal of the lease of 1902 or any renewals of that lease. It is clear, therefore, that the parol evidence admitted by the learned court and on which it based its findings of fact and conclusions of law was incompetent and the motion to strike it out should have prevailed. It established a parol agreement in direct conflict with the terms of the written contract, without any evidence or even any allegation of fraud, accident or mistake. The well recognized rule in such cases is stated with the authorities, including our own decisions, sustaining it in 17 Cyc. of L. & P. 622, as follows: 'The terms and effect of a written lease cannot be added to, contradicted or varied by parol or extrinsic evidence of the intentions of the parties, their negotiations leading up to the lease, or what was said and done prior to and at the time of executing the instrument.' "

See, also, Hall v. Phillips, 164 Pa. 494; Becker v. Second Active Building Ass'n, 239 Pa. 500, and Crelier v. Mackey, 243 Pa. 363.

The written terms of the lease we are construing negative the existence of any agreement to relieve the lessee of liability upon a transfer or assignment, for the lease expressly provides that the lessee shall not assign the same without the written consent of the owner first had and obtained, and emphasizes the proviso that he may sublet a portion of the demised premises provided he obtains the written consent of the lessor. Neither fraud, accident nor mistake are averred, and no reason is given why the verbal understanding alleged in the affidavit of defense was not incorporated in the writing.

In Crelier v. Mackey, supra, there was an action brought on an agreement signed by the defendant. He offered to prove at the trial, as a defense to the action, that he signed the contract merely as the representative of the Thomas R. Mackey Baking Company, of which he was the president, and that this fact was known to the other party to the agreement at the time that it was executed. Mr. Justice Brown, in affirming the action of the trial court which refused the offer, said:

"If the offer had been allowed, permission would have been given the defendant to vary and contradict the terms of a plain contract and to substitute for it another, upon which the appellee would have no cause of action against the appellant. With no averment in the affidavit of defense and with no offer on the trial to prove that there had been any fraud, accident or mistake in the execution of the agreement, its plain terms were not to be radically changed by parol: Hunter v. McHose, 100 Pa. 38; Wodock v. Robinson, 148 Pa. 503; Krueger v. Nicola, 205 Pa. 38; Lowry v. Roy, 238 Pa. 9. The meaning of the parties to the agreement is conclusively presumed to have been set forth in its written words, and, as they speak for themselves, their meaning was for the trial judge."

In Sanders v. Sharp, 153 Pa. 555, it was held, upon a rule for judgment for want of a sufficient affidavit of defense, that a lessee, in the face of the terms of a written lease, cannot relieve himself of personal liability by showing by parol evidence that he was acting as the agent of a proposed corporation or the persons who were about to organize such company, at least without showing that the execution of the lease was induced by fraud or misrepresentation.

The affidavit of defense does not plead an acceptance by the Insurance Company of Philadelphia of the provisions of the lease or an assumption by the corporation of the defendant's liability thereunder. This is one of the valid essentials of a legal novation. If the defendant were not the lessee and the proposed company only held as assignee or transferee of the lease, then no one sustained a contractual relationship to the plaintiff which could be made the basis of a suit to enforce the performance of the covenants of the lease; only through the privity of estate could he call any one to account in an action at .

law. It is hardly to be presumed that, in the face of the provisions of the written lease, the plaintiff would so contract for the demise of his property as to leave no one responsible to him as a lessee. Having taken the lease in his own name, the defendant cannot rid himself of liability by showing the agency alleged.

"Where parties contracted as the agents and for the benefit of a company, but the contract was under their own hands and seals, they were individually liable, and an action of covenant was properly brought against them as individuals:" Quigley v. De Haas, 82 Pa. 267.

Heckman's Estate, 172 Pa. 185, cited by counsel for the defendant, is not controlling. In that case, the agent for the lessor himself was a member of the company for whose use and benefit the lessee became obligated on the lease, and the court properly held that it would have been a fraud on the lessee for the lessor to attempt to hold him personally responsible.

The facts there disclosed a recognition by the lessor of the liability of the company plus an assumption by the company of the tenant's liability under the lease. When the corporation was organized, the lessee assigned the lease to the corporation, which took possession and paid the rent, the bills being made out in the name of and being presented to the corporation.

It is apparent that this case is distinguishable on its facts, and although Mr. Machen, in his treatise on Corporations, section 336, believes that the case is against the current of authority, it is evident that the decision there was based on its own peculiar facts.

Part of plaintiff's claim is grounded upon the removal "from said demised premises of all of his goods and effects" and by virtue of one of the provisions of the lease the entire rental for the remainder of the term became accelerated and immediately "due and payable." What goods and effects belonging to the defendant were on the demised premises is not stated. The defendant asserts that "he at no time occupied the premises," and he denies that "he removed from said premises his goods on Feb. 13, 1930." Neither the use-plaintiff's pleading with reference to a removal of goods (which would bring about an acceleration of rent) nor the defendant's answer thereto measures up to the legal requisites of orderly pleading.

The language of the lease plainly means the tenant's removal. It would require a straining of that language beyond its plain meaning to make the mere attempt of a third person to remove his own goods, happening to be on the premises, "as effectual to advance the time of payment of rent, as would be a similar attempt as to goods he owned or controlled:" Shoop v. Fee, 57 Pa. Superior Ct. 585. See note in 58 Am. Law Reps. 300.

To entitle a plaintiff to judgment for want of an affidavit or a sufficient affidavit of defense, all the essential ingredients of a complete cause of action must affirmatively appear in the statement and the exhibits which are made part thereof; the statement of the demand must be self-sustaining; that is to say, it must set forth in clear and concise terms a good cause of action, by which is meant such averments of fact as, if not controverted, would entitle him to a verdict for the amount of his claim. See Parry v. Bank, 270 Pa. 557; Lederle v. Kaplan, 93 Pa. Superior Ct. 147.

This action was instituted June 9, 1930. The use-plaintiff would, under the pleadings filed, be entitled, as the record stands at the present time, to judgment for the rental which became due Feb. 15, March 15, April 15 and May 15, 1930; in other words, to a judgment in the sum of $300.

The fact that a larger sum may have become due when the use-plaintiff took the rule for judgment is no reason for awarding it to the use-plaintiff, if, in

the first instance, it had no right to sue for it: Columbia National Bank *v.* Dunn, 207 Pa. 548.

Under the Practice Act of May 14, 1915, P. L. 483, upon a rule for judgment for want of a sufficient affidavit of defense, judgment may be entered for part of a claim, with leave to proceed for the balance. See Fulton Farmers' Ass'n *v.* Bomberger, 262 Pa. 43.

And now, Dec. 24, 1930, the rule for judgment for want of a sufficient affidavit of defense is made absolute in the sum of $300, without prejudice to the right of the use-plaintiff to proceed for the balance of the claim.