# Ruth-Hastings Glass Tube Company *v.* Slattery, Appellant.

*Practice, C. P.—Affidavit of defense—Defenses not raised by affidavit—Act of May 14, 1915, P. L. 483.*

1. Section 16 of the Practice Act of May 14, 1915, P. L. 483, limiting defenses to those raised by the affidavit of defense, should be strictly enforced.

*Words and phrases—"More or less"—Intention of parties.*

2. While the words "more or less" following a specified amount will generally be construed to mean approximately that amount, it will not be so held if it appears this was not the intention of the parties.

*Contract—Agreement to supply articles for a particular use— Quantity needed—Quantity stated.*

3. If the real purpose of an agreement is to enable a vendee to get the articles for a particular use, he is entitled, if acting in good faith, to the quantity needed, and to that only, though it may be much more or less than the amount stated.

*Evidence — Written contract — Parol evidence — Intention of parties—Alteration by parol.*

4. Where it is proved or admitted, by a party relying on a written agreement, that one or more terms thereof do not express the intent of the parties, or have been altered by parol, either litigant may produce evidence in regard to such matters.

Argued January 7, 1920. Appeal, No. 24, Jan. T., 1920, by defendant, from judgment of C. P. No. 2, Philadelphia Co., June T., 1917, No. 1617, on verdict for plaintiff in the case of Ruth-Hastings Glass Tube Company v. Thomas F. Slattery, Trading as Slattery Broth-

RUTH-HASTINGS G. T. CO. *v.* SLATTERY, Appel. 289

ers.  Before Moschzisker, Frazer, Walling, Simpson and Kephart, JJ.  Reversed.

Assumpsit to recover sum of $6,165.50 alleged to be due as damages for breach of contract to deliver coal. Before Rogers, J.

Verdict and judgment for plaintiff for $3,495.40.  Defendant appealed.

*Errors assigned* were rulings on evidence and various answers to points.

*Thomas H. McCaffrey,* for appellant.—In determining whether a contract is entire or severable it is necessary to ascertain the intention of the parties: Shinn v. Bodine, 60 Pa. 182; Scott v. Kittanning Coal Co., 89 Pa. 231; Rugg and Bryan v. Moore, 110 Pa. 236; Producers Coke Co. v. Hillman, 243 Pa. 313.

The statement of claim asserts that the contract had been modified.  The plaintiff is bound by his pleadings: Kime v. Tobyhanna Creek Ice Co., 240 Pa. 61.

A written contract may be modified by a subsequent oral agreement, and the parol evidence rule does not exclude oral evidence thereof: Beatty v. Larzelere, 194 Pa. 605; Fleck v. Collins, 28 Pa. Superior Ct. 443; Mc-Cauley v. Keller, 130 Pa. 53.

The meaning placed upon the contract by the parties governs: People's Natural Gas Co. v. Braddock Wire Co., 155 Pa. 22; Sherman v. Consolidated Dental Manufacturing Co., 202 Pa. 446.

*W. Horace Hepburn, Jr.,* for appellee.—The plaintiff does not have to purchase coal in the open market, but the damages are the difference between the market price and the contract price: Shreve v. Brereton, 51 Pa. 175.

Opinion by Mr. Justice Simpson, February 2, 1920:

Plaintiff sued to recover on a written contract, by which defendant agreed to sell and plaintiff agreed to

buy "3,000 tons more or less" of bituminous coal from the George's Creek district, at the price of $1.75 per ton, to be delivered f. o. b. mines, in about equal monthly installments ending April 1, 1917, the contract containing the usual clause relieving the vendor of liability in case of a failure to deliver because of strikes, interruption of transportation, or other causes beyond his control. Plaintiff alleged defendant delivered only a little over 1,276 tons, and claimed to recover the difference between the contract price and the market price of the balance, at the time and place of delivery.

The affidavit of defense admitted the execution of the contract, and the quantity delivered, but averred defendant's failure to deliver more was due to a shortage of cars at the Eckhart Mine in the George's Creek district, from which mine he alleged all coal deliverable under the contract was to be obtained; and also that he was not obliged to deliver to plaintiff 3,000 tons, but only so much thereof as was necessary to enable plaintiff to run its plant.

Plaintiff having recovered a verdict and judgment, defendant now appeals, and its principal assignments allege errors regarding the two matters above specified. All those relating to the first thereof must fail, because the contract does not refer to the Eckhart mine, and there is no allegation that anything was omitted by fraud, accident or mistake, or that any promise was made to induce its execution, and hence it cannot be overthrown or modified by oral evidence (Krueger v. Nicola, 205 Pa. 38; General Motors Truck Company v. Philadelphia Paving Co., 248 Pa. 499), especially as section 16 of the Practice Act of May 14, 1915, P. L. 483, provides that "Neither party shall be permitted at the trial to make any defense which is not set forth in the affidavit of defense or plaintiff's reply, as the case may be," except where the action is trespass or the defendants are fiduciaries.

This section has worked a wise and vital change in practice, though some of the profession do not seem to appreciate it. Except where court rules provided otherwise, the only purpose of an affidavit of defense under the prior law was to prevent summary judgment. Under this section, however, it is an essential part of the pleadings, and the court below should refuse to admit evidence upon any issue not raised thereby. The provision for amendments gives ample opportunity for the curing of oversights; and hence where, as here, the evidence offered is not within the issues raised either by the original pleadings or amendments thereof, its exclusion by the court below must be approved.

Defendant's fourth point embodied in the twelfth assignment of error, deals with the second of said issues, and should have been affirmed. It is as follows: "4. Notwithstanding that the contract mentioned 3,000 tons more or less, should you find that the contract was really to supply the needs of the plaintiff's manufactory within the time of the contract, and that during the months of July, August and September but two cars of coal were required each month, and thereafter but four or five cars per month, then you will disregard the number of tons as stated in the contract and consider only the number of cars of coal required by the plaintiff's plant during the period of the contract."

It will be noticed that defendant did not agree to deliver 3,000 tons of coal, but only "3,000 tons more or less." This is an indefinite quantity, and especially subjects the contract to the rule that "every agreement should be interpreted with reference to the circumstances under which the parties contract and in the light of the objects to be accomplished": McKeesport Machine Co. v. The Ben Franklin Insurance Co., 173 Pa. 53; Myers's Est., 238 Pa. 195, 211. It is true the words "3,000 tons more or less" ordinarily would be construed to mean that the amount should be approximately that stated, because usually that is the intention of the par-

ties; but in ascertaining the intention this is not always so. If those words follow an alleged quantity of land which is also described by metes and bounds, or an estimated quantity of personal property in bulk, the vendor is obliged to give and the purchaser to take whatever there is, even if it is considerably more or less than that stated; or if the real purpose of the provision is to enable the vendee to get the article desired for a particular use, as for instance to operate a plant during a specified period, it can require enough for that use and need take no more, though it is considerably more or less than the amount named: Glen v. Glen, 4 S. & R. 488; Ashcom v. Smith, 2 P. & W. 211; Petts v. Gaw, 15 Pa. 218; Coughenour's Adm's v. Stauft, 77 Pa. 191; McCullough v. Manning, 132 Pa. 43; Lobenstein v. United States, 91 U. S. 324; Brawley v. United States, 96 U. S. 168; 35 Cyc. 206-7; Williston on Sales, sec. 464. The latter point is well illustrated in Brawley v. United States, supra, where it is said, "if it be agreed to furnish so many bushels of wheat, more or less, according to what the party receiving it shall require for the use of his mill, then the contract is not governed by the quantity named, nor by that quantity with slight and unimportant variation, but by what the receiving party shall require for the use of his mill; and the variation from the quantity named will depend upon his discretion and requirements, so long as he acts in good faith."

In the present case the evidence shows, and appellee says in its paper-book, "it is admitted that appellee was contracting for the year's supply of coal for this factory"; and its manager testified that the reason why the language "3,000 tons more or less" was used, was "to note the fact that if we wanted more coal we could get it," and of course if they did not require so much that they need not take beyond their needs. It follows that plaintiff was entitled by the contract to receive only sufficient coal to run its plant, and this is recognized in the statement of claim, which avers: "Immediately there-

after [i. e. after the execution of the contract] the agent of the plaintiff and the agent of the defendant, both being duly authorized by the contractors, agreed in pursuance of their authority that during the months of July, August and September, the plaintiff would require about two cars of coal per month, and that thereafter the plaintiff would require four or five carloads of coal per month until the full 3,000 tons of coal were purchased." Under section 16 of the Practice Act of May 14, 1915, above quoted, plaintiff would be permitted only to recover in accordance with that averment; which is, after all, merely a statement of the needs of plaintiff's plant, is within the rule above mentioned, and hence demonstrates the error of refusing the point now under consideration.

Under this averment of the statement defendant was required to furnish only during the period of the contract from July 1, 1916, to April 1, 1917, either 30 or 36 carloads, depending on whether four or five were needed for the months beginning with October and ending with March; and, in the absence of averment and proof to the contrary, the presumption is that the cars were to be of the capacity commonly used for the shipment of coal from the George's Creek district. In the exhibit attached to the statement it appears that, after this agreement is alleged to have been made, 22 carloads were delivered aggregating 1,017 tons, the average capacity of the cars therefore being about 46 tons. Assuming this to be a fair average, under the above quoted paragraph of the statement the deficit was at most only 14 cars or 644 tons, instead of 1,983 tons, as claimed by plaintiff and submitted to the jury.

It is true the paragraph also alleges defendant was to send cars "until the full 3,000 tons of coal were purchased." To do so, however, would require him to continue to send them until long after the date specified in the contract, a conclusion not suggested in the statement, which, on the contrary, contemplates that all the

coal should have been delivered prior to April 1, 1917, from which date interest is claimed. If plaintiff meant to allege a change of the contract in this respect it should have distinctly averred as well as proved it, in which event, the date fixed by the writing not being controlling, the matter would have been open to the production of oral evidence by either party: Federal Sales Co. v. Farrell, 264 Pa. 150, 153; Kerr v. McClure, 266 Pa. 103.

In view of our conclusion on this point, we need not consider the other question raised.

The judgment of the court below is reversed and a venire facias de novo awarded.